SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-------------------------------------------------------------------X
In the Matter of the Application of

    MEHLON TRUCKING, INC.,
                     Petitioner-Plaintiff,

                                        Index No. **2007-2713**

For a Judgment Pursuant to Article 78
of the CPLR

        -against-                             **VERIFIED PETITION**
                                          **AND COMPLAINT**

THE PLANNING BOARD OF THE
TOWN OF MONTGOMERY and
EDWARD BEAUMONT as Chairman
of the Planning Board of the Town of
Montgomery,
                          Respondents-Defendants.
-------------------------------------------------------------------X

        Petitioner-plaintiff, Mehlon Trucking, Inc. ("Mehlon"), by its counsel, Werner & Saffioti,

LLP, for its Verified Petition and Complaint, respectfully alleges:

INTRODUCTION

        1.      Mehlon brings this combined Article 78 and declaratory judgment action against

respondents-defendants, Planning Board of the Town of Montgomery and its Chairman, Edward

Beaumont, seeking the determination of its application for a Special Exception Use Permit for

temporary removal of sand and gravel operation and its issuance in conformity with the

application. Accordingly, Mehlon seeks an order compelling the Planning Board to issue the

Special Exception Use Permit for temporary removal of sand and gravel operation and a final

determination on its application and the issuance of the permit to Mehlon in accordance with the

New York Town Law and the Town of Montgomery Zoning Law. Mehlon also seeks a

judgment declaring respondents' willful and malicious refusal to make a determination on

Mehlon's application a violation of Mehlon's right to due process of law and equal protection

under the United States and New York State Constitutions.

-1-

2.     Mehlon had in 1988 applied to the New York State Department of Environmental Conservation ("DEC") for renewal and reissuance of a state permit for shale removal. The renewal state mining permit was for a specified limited time period. Mehlon then inquired of the Planning Board what would be necessary to satisfy Town of Montgomery requirements. The Planning Board told Mehlon that a Special Exception Use Permit for temporary removal of sand and gravel would be needed. As a result, also in 1988, Mehlon applied to the Planning Board for the Special Exception Use Permit for the temporary removal of sand and gravel and the Planning Board accepted the application.

3.     Also during 1988, the Planning Board designated itself as Lead Agency to conduct the Environmental Review Process pursuant to the State Environmental Quality Review Act ("SEQRA") for the application for the Special Exception Use Permit. The Planning Board also held a public hearing on the application in 1989 and at the conclusion of the hearing, voted to close the hearing. Meanwhile, the DEC was unable to act on the state mining permit application because the Planning Board had assumed Lead Agency status and the SEQRA process remained incomplete.

4.     Finally, in 2001, the Planning Board granted the DEC Lead Agency status for SEQRA and the DEC accepted Lead Agency status. The DEC issued a determination of a SEQRA Negative Declaration Notice of Determination of Non-Significance ("Negative Declaration") and reissued a DEC mining permit during 2005. The Planning Board, however, has failed and has refused to make a determination on the application for the Special Exception Use Permit.

5.     The Planning Board has wrongfully alleged, despite any substantive or legitimate basis for such conclusion, that Mehlon has abandoned the application. The Planning Board has deliberately engaged in a course of conduct refusing to inform what, if anything, remains to be done before it makes its determination on the application and has refused to issue a

determination on the application. The Planning Board has never voted on, issued, filed and provided Mehlon with a determination on its application.

6.      The Planning Board has also, in a purposeful and malicious abuse of the application process, after directing Mehlon to apply for a Special Exception Use Permit for the temporary removal of sand and gravel, then accepting the application, holding a public hearing and engaging in numerous meetings and communications over a period of more than 15 years, subsequently informed Mehlon that it incorrectly applied for a Special Exception Use Permit for a temporary removal of sand and gravel operation and should have applied for a Special Exception Use Permit for a shale quarry which is not allowed in the zone where Mehlon's property is located, and therefore will require a variance from the Zoning Board of Appeals.

7.      The true motive for the Planning Board's course of action is transparent. It seeks to pervert and dismiss the application process in order to avoid the issuance of the Special Exception Use Permit for temporary use of sand and gravel operation or a substantive decision on the merits of Mehlon's application and thereby preclude any subsequent judicial review of its determination. The application process is finite and cannot be mangled to afford the Planning Board a "pocket veto" over this application. Mehlon is entitled to a final decision granting the application for a Special Exception Use Permit for the temporary removal of sand and gravel operation because it has demonstrated its use complies with the applicable special use criteria and no reasonable grounds supported by substantial evidence exist to deny it and for an order to constructively approve the permit as mandated under the Town Law and the Montgomery Zoning Law. Should the Court direct the application for the permit be remanded, it should direct the Planning Board only to consider an application for temporary sand and gravel removal operation and not for a shale quarry because it has acquiesced in and is estopped to deny it as appropriate. Should the Court remand it should also issue a judgment declaring the shale quarry special permit provision of the Montgomery Zoning Law invalid as having been superseded by

the State Mined Land Reclamation Law. Finally, a determination is warranted that Mehlon's denial of a special use permit violated its constitutional rights and damages should be assessed against the respondents-defendants.

PARTIES

8.      Petitioner-plaintiff Mehlon is, and at all pertinent times was, a corporation organized and existing under the laws of the State of New York with its principal place of business located at 320 Orchard Drive, Wallkill, New York 12589.

9.      Mehlon owns, and at all pertinent times has owned, a parcel of land consisting of 159.9 acres located in the Town of Montgomery, County of Orange, State of New York. Prior to owning the parcel of land (the "Land"), Mehlon was the permitee operator under a DEC shale mining permit for the prior owner.

10.     The DEC has issued to Mehlon a DEC Mined Land Permit to mine shale and reclaim the mine for 4 acres on the Land in 1982, which expired in 1986. Mehlon applied to the DEC for renewal and reissuance of a Mined Land Permit in 1988 for 18.1 acres of the entire 159.9 acre of the Land. Mehlon again applied to the DEC for the same thing and the Mined Land Permit was renewed and reissued by the DEC in 2005, as is more fully described below.

11.     Mehlon has since 1988, after filing for the DEC to renew and reissue its Mined Land Permit, also sought a Special Exception Use Permit from the Town of Montgomery Planning Board, as is more fully described below.

12.     Respondent-defendant Town of Montgomery Planning Board ("Planning Board") is a board established pursuant to the New York Town Law and the Town of Montgomery Zoning Law ("Zoning Law").

13.     The Planning Board has jurisdiction to grant the Permit for uses or projects in the Town of Montgomery requiring such Special Exception Use Permit approval under the Town of Montgomery Zoning Law.

14.    Respondent-defendant Edward Beaumont is the Chairman of the Planning Board.

<u>THE SHALE REMOVAL OPERATION</u>

15.    A small portion of Mehlon's 159.9 acre parcel of the Land had been used as a
shale removal operation by its previous owners beginning in approximately the late 1940's or
early 1950's.  Subsequently, the DEC began regulating removal operations pursuant to
Environmental Conservation Law ("ECL"), Article 23 entitled "Mineral Resources", Title 27
entitled "Mined Land Reclamation Law" ("MLRL"), which became effective on April 1, 1975.

16.    ECL §23-2703(1) sets forth the legislative purpose of the MLRL, which provided
in part:

> The legislature hereby declares that it is the policy of this state to
> foster and encourage the development of an economically sound and
> stable mining industry, and the orderly development of domestic mineral
> resources and reserves necessary to assure satisfaction of economic needs
> compatible with sound environmental management practices. The
> legislature further declares it to be the policy of this state to provide for the
> management and planning for the use of these non-renewable natural
> resources and to provide, in conjunction with such mining operations, for
> reclamation of affected lands;

Engaging in mining was permitted and regulated by issuance of a DEC Mining Permit.

17.    In 1982, after having been contacted by the DEC to do so, the former owners of
the Land submitted a DEC Mining Permit Application and Reclamation Report for the shale
operation with Mehlon as the mine operator. A copy of a letter to the DEC from the applicant's
engineer dated March 5, 1982 is annexed as Exhibit "A".  The DEC Mining Permit Application
and Reclamation Report, also dated March 5, 1982, is annexed as Exhibit "B".

18.    The DEC issued to Mehlon the Mining Permit as set forth in the notification dated
March 15, 1982, a copy of which is annexed as Exhibit "C".  Also received by Mehlon from the
DEC was a "Negative Declaration Notice of Determination of No Significance" dated March 15,
1982 for the operation of a shale mine pursuant to the SEQRA.  A copy of the Negative
Declaration dated March 15, 1982, stating operating a shale mine "will not have a significant

-5-

effect on the environment" and will be reclaimed, is annexed as Exhibit "D". According to the Negative Declaration, a copy was furnished to the Carl Helstrom, Supervisor of the Town of Montgomery.

19.    Mehlon subsequently acquired ownership of the subject parcel of land. Then, on May 26, 1988, Mehlon signed a Mining Permit Application and Reclamation Report for shale mining that expanded the 4 acres to 18.1 acres. The DEC Mining Permit Application also was signed on July 8, 1988 by Carl Helstrom, who at that time was the Montgomery Town Supervisor, acknowledging that he had been advised of the contents of the reclamation. A copy of the Mining Permit Application is annexed as Exhibit "E".

20.    The Mining Permit Application, the mined-use plan survey of the parcel of property dated March 5, 1988 and engineering plans were submitted to the DEC. A copy of the mined use plan dated July 1988 is annexed as Exhibit "F". The mined use plan explained that the original 4 acres that had been mined was inactive and would be reclaimed and the expanded mining would be in five 3-year sequenced phases with reclamation occurring upon completion of each sequenced phase and each completed within six months. A copy of the survey, mining plan, reclamation plan and other engineering plans submitted to the DEC are annexed as Exhibit "G".

<u>THE PLANNING BOARD SPECIAL USE PERMIT APPLICATION</u>

21.    The Town of Montgomery Building Inspector had notified Mehlon that a permit from the Planning Board would be necessary and the Mining Permit Application submitted to the DEC indicated that "Town of Montgomery requirements are pending review of NYDEC permit application."

22.    Mehlon's then legal counsel, Emilio D. Gironda, Jr., wrote to the Town of Montgomery Planning Board Chairman on June 29, 1988 (Exhibit "H") and inquired what would be needed in order to comply with local laws. The Chairman responded by letter dated July 19, 1988 (Exhibit "I"), which stated:

In response to your letter with regard to the above, as soon as you complete your submission, we will forward it to our planner for his preliminary review. **Please obtain a copy of our Zoning Law, as it provides for sand and gravel operations as a Special Use Permit in various zones within the Town.** You will need an application (enclosed), environmental review forms (enclosed) and you must ultimately submit a fee based upon the expected capacity of the mine.

      **Since you will need a DEC mining permit, you may wish to submit to us simultaneously. However, we will not make a final decision until you obtain a DEC perm[i]t and we have held a public hearing as required by our Zoning Law.** [Emphasis supplied.]

23.      On September 19, 1988, Mehlon submitted to the Planning Board an application for Special Exception Use Permit ("SEU Permit") and Full Environmental Assessment Form ("EAF") as required by the SEQRA (Exhibit "J") and survey, mined land-use plan, mining plan and all the other engineering plans that had been submitted to the DEC and a copy of the DEC Mining Permit application.

24.      The Application petitioned for a SEU Permit under §130-40-30.33 of the Town of Montgomery Zoning Law, adopted July 8, 1971, which provided, in its entirety (Exhibit "K"), that:

> TEMPORARY SAND AND GRAVEL REMOVAL OPERATIONS MAY BE LOCATED IN ANY DISTRICT:
> (a)     The minimum site shall be 10 acres.
> (b)     The removal operation shall not be closer than 300 feet of any residential use.
> (c)     The removal operation shall conform to the provisions of the municipal sand and gravel ordinance with respect to such temporary operations.

The same §130-40-30.33 remained unchanged although the Zoning Law was amended during March, 1999 (Petition, Exhibit "L"). Upon information and belief, there has been no municipal sand and gravel ordinance during any relevant time period. Effective May 18, 2006 the Zoning Law again was amended. Former §130-40-30.33 was renumbered §130-40-30.43 (Exhibit "M"). It continued to permit temporary sand and gravel operations in any zoning district, retained subsections (a) and (b) unchanged and substituted a new subsection (c), which read:

(c)    Coordination with NYDEC permit process shall be required for all mining operations that otherwise require a permit from the NYDEC. Any applicant in need of a DEC permit must file copies of all applications, plans, correspondence, etc. with the Planning Board within seven (7) days of the filing of the same with the DEC. All Notices from the DEC, likewise, shall be filed with the Planning Board by the applicant within seven (7) days of receipt.

25.    The EAF that had been submitted to the Planning Board with its application for SEU Permit (Exhibit "J") stated, in addition to a DEC Mining Permit, a variance from the Town Zoning Board was needed.

## PLANNING BOARD DESIGNATES SELF AS LEAD AGENCY

26.    The DEC, by letter to the Planning Board dated November 10, 1988, inquired pursuant to SEQRA procedure whether the Planning Board was interested in assuming Lead Agency responsibility under SEQRA and which issues of concern which the Planning Board believes should be evaluated. It annexed to the letter a copy of the Mining Permit application and Environmental Assessment Form ("EAF") that had been submitted to the DEC (Exhibit "N").

27.    At a meeting held November 28, 1988, the Planning Board by motion (Exhibit "O") declared itself the Lead Agency under SEQRA. By letter dated December 22, 1988, the DEC consented to the Planning Board being Lead Agency, informing that, "At this time, the Mehlon application to DEC is incomplete pending resolution under SEQR" (Exhibit "P").

28.    The "Notice of Designation of Lead Agency Mehlon Trucking – Mining Plan" by the Planning Board dated January 9, 1989 (Exhibit "Q") indicates that the motion was passed by the Planning Board on November 28, 1988, and in pertinent part relates that:

SUMMARY OF ACTION: The project involves a proposed Special Exception Use permit for a shale mine and its subsequent reclamation. The land proposed to be mined includes an area which has already previously been mined but which has not been reclaimed. The applicant has submitted a detailed mined land use plan which addresses areas of environmental impact, mined land operational plans, timing of operation, and reclamation data. Although the property is 156 acres, the area to be mined constitutes less than 15% of the site.

-8-

A notice of determination of significance will follow.  If within 30 calendar days from the date of mailing this notification no involved agency submits a written objection to the Town of Montgomery Planning Board, then the Town of Montgomery Planning Board shall be the lead agency and shall follow the provisions of the New York Code of Rules and Regulations Part 617 governing further SEQR procedures.

## PLANNING BOARD DETERMINES ONLY SEU PERMIT AND NOT VARIANCE NEEDED

29.    The Planning Board notified Mehlon's then attorney by letter dated January 13, 1989 that the submittal for a SEU Permit had been reviewed (Exhibit "R") and the letter contained comments.  **Among the comments from the Planning Board was that the Long Form EAF, which states a Zoning Board variance is needed is incorrect and should only state that Planning Board approval of a special use permit was required.**  It further stated that the Planning Board's "main concern is the final condition of the mine pit at the end of the project" and "[t]his should be addressed in detail by the DEC and then we can review that final plan."

30.    Responding to the Planning Board's letter, Mehlon's engineering company, by its letter dated March 23, 1989, addressed each of the comments with a summary of each of the revisions as necessary (Exhibit "S") and submitted a revised Long Form EAF dated March 23, 1989 (Exhibit "T").  **As summarized in the letter, there was now omitted the mention of a Zoning Board variance in the enclosed, revised EAF and it was replaced with required Planning Board approval of Special Use Permit.**  The engineering company referred the Planning Board to the mined land-use plan and informed that the plan must be approved by the DEC and an assurance bond posted with the DEC. The letter indicated that the comment concerning whether the parcel of property was entirely within the Town of Montgomery would be addressed by Mehlon's counsel.  The letter specifically addressed every other comment and either referred the Planning Board to documents previously submitted to it or to revisions in the EAF or mined land-use plan.  It stated it looked forward to the determination regarding SEQRA

-9-

and a public hearing on the SEU Permit application at the earliest possible date.

<u>THE PUBLIC HEARING</u>

31.     A public hearing on the application for the SEU Permit was held before the Planning Board on June 26, 1989.  A copy of the minutes of the hearing are annexed as Exhibit "U".

32.     The hearing minutes show that Mehlon had "petitioned the Planning Board for a Special Exception Use Permit to maintain and operate a temporary sand and gravel removal operation on a portion" of their land.  The Planning Board attorney explained special conditions are attached to temporary sand and gravel operations including conformity to the town sand and gravel ordinance, but the town "does not have a sand and gravel ordinance but defers to the DEC."  Upon information and belief, the Town of Montgomery has not since enacted a sand and gravel ordinance.

33.     Fran Geissler of Wehran Engineering made the presentation at the hearing for Mehlon.  She explained that 18.1 acres of the approximately 160 acre parcel would be used; that the site has a power line running through it and an existing shale mine which consists of approximately 40% of the area to be used; that the site borders the Town of Newburgh and the Town of Shawangunk in neighboring Ulster County; that approximately 820,000 cubic yards of in-place shale would be moved over a period of 15 years and in three 5-year phases; that "the first phase reclamation work would be done on the site where the mine now exists, removing the steep slopes"; that "when one phase is done that land will be totally reclaimed and that it will be grass with meadow type vegetation with scrubby type bushes" because the shale is very near the surface; that the existing access road will continue to be used but drainage control would be installed; and that the intersection with Kings Hill Road would be upgraded to DEC standards to accommodate 20 trucks a day.

34.     The hearing minutes also reflect that the Planning Board's attorney had stated that

the DEC permit application awaited Planning Board resolution of SEQRA issues because it had lead agency status. In response to a number of questions from attendees regarding the shale removal operation, the hearing minutes disclose that besides responding verbally to the questions, Ms. Geissler "explained that the applicant has spent quite a bit of money putting together a mining plan which describes how the mine will be dug, what blasting will be like, what erosion control measures will be and dust control and that copies were submitted to the Board." She also explained that there was a plan filed for upgrading the access road and the entrance would be gated.

35.    The hearing minutes further reflect that the Planning Board attorney confirmed that with respect to any allegation by a Mr. Joseph Carfizzi that part of the subject property was in the Town of Newburgh, he did not understand that there was a boundary line dispute involving the Town of Montgomery and the Town of Newburgh and that if there was then there is a procedure by which municipalities may resolve boundary disputes. Ms. Geissler also related that Wehran Engineering had prepared an actual field survey of Mehlon's property, that all the surrounding deeds had also been searched and some go back quite a ways and that there is nothing to suggest that Mehlon's property is not in the Town of Montgomery. She stated that the survey certified that the property is in the Town of Montgomery.

### THE SEQRA PROCESS

36.    Mehlon then retained as new counsel Robert E. Dinardo, who wrote to the Planning Board on June 28, 1989 (Exhibit "V") and informed that Fran Geissler of Wehran Engineering was available to address all the issues raised at the hearing. He stated that a Negative Declaration pursuant to SEQRA should be issued because, "First, we believe that all reasonable mitigating measures which could be incorporated as part of the Environmental Impact Statement have already been incorporated into the application. Secondly, all of the specific mitigating measures required by DEC regulation have been incorporated into the application.

Lastly, there is concurrent jurisdiction being exercised by DEC and a mine use permit must be obtained from the DEC. DEC has indicated that the application is incomplete because the Planning Board, as Lead Agency, has not yet made the threshold environmental determination. In other words, DEC will not process the State Mining Permit until the Planning Board makes the initial environmental determination. It would appear prudent for both mining applications, Town and State, to be processed contemporaneously. I therefore request that the Planning Board make the environmental significance determination as soon as possible."

37.    Instead, according to the minutes of the July 10, 1989 Planning Board meeting (Exhibit "W"), Chairman Kelly reviewed a letter the Planning Board had received from the New York City Office of Water Supply requesting an opinion on a weight limit for Mehlon's trucks that will cross the New York City acqueduct. The attorney to the Planning Board informed that there were no weight restrictions on Town of Montgomery roads in the vicinity of Mehlon's property. A letter was to be sent to Mehlon to address areas of concern to the Planning Board.

38.    By letter dated July 17, 1989 (Exhibit "X"), the Planning Board wrote to Mehlon's then attorney, advising that it was not ready to consider a negative declaration until the EAF was revamped with attached appendices, if necessary. It requested analysis and proposed mitigation measures regarding the following: (1) Blasting – the 800 foot radius does not include any residences in the Town, but because at the hearing some residents had claimed previous blasting was noticeable and because water from some wells in the area may have changed composition at that time, more review was needed; (2) Weight Limits – because previous operations have negatively impacted Kings Hill Road, the Town does not wish to have the same thing happen again; also, the appropriate New York City agency must sign off on trucks crossing the aqueduct; and (3) Dust Control, Hours of Operation, Noise, Traffic – further research was requested and mitigation proposals sought. The Planning Board letter also stated that "the Town of Montgomery will not accept any responsibility on behalf of your client if the

-12-

boundary issue reveals that any of the subject property is in fact in the Town of Newburgh. Absent formal notification from the Town of Newburgh, our position remains that there is no municipal dispute." Upon information and belief, there has not been such a municipal dispute and any litigation or any municipal settlement concerning it.

39.    Mehlon and its then attorney met with the Planning Board's consultant, Chairman Kelly of the Planning Board and various town representatives, on July 26, 1989. The Planning Board's consultant's letter dated that date (Exhibit "Y") directed that Mehlon design an in-ground bridge that is required by New York City for crossing the acqueduct or alternatives for access. Also, it requested more detail regarding traffic, noise and dust. A letter from the Planning Board to Mehlon's then attorney dated July 27, 1989 related that pursuant to the July 26, 1989 meeting that "you incorporate this review into your modified SEQRA study, which we previously wrote to you about, and resubmit all documents to us so that we may make a reason[ed] determination as to SEQRA". The letter also stated that "until all necessary information is received and evaluated pursuant to SEQRA this matter will be on hold and all time periods within which the Planning Board must render a decision are tolled" (Exhibit "Z").

40.    Then, together with a letter dated December 22, 1989 to Mehlon from James J. Niebuhr, Town of Montgomery Building and Zoning Inspector, that advised about complaints "registered with this Department about the work that you are performing in the shale bank" and advised "I have placed a stop order on the quarry site", he enclosed a Notice of Violation (Exhibit "AA"). The Notice of Violation stated that the violation was "Quarry and mining – loading and hauling – and/or processing of sand, gravel, shale or topsoil" and the conditions causing the violation were "1. Operating a quar[r]y and mining operation  2. Loading and hauling of shale  3. Processing of shale  4. Failure to secure SEU permit from the Planning Board 5. Failure to secure SEU permit from D.E.C."

41.    A letter from the Planning Board to Mehlon's attorney dated June 14, 1990 again related "that until such time as all necessary information pursuant to SEQRA is submitted, the Board deems this matter to be on hold pending action of the applicant" and that "If the Mehlon Mine project is no longer being pursued, would you kindly send us a letter to that affect [sic]" (Exhibit "BB").

### MEHLON'S ATTEMPT TO HAVE DEC REDESIGNATED LEAD AGENCY

42.    Mehlon then hired Laura Zeisel as new counsel.  The Town Attorney wrote to her by letter dated December 6, 1991 (Exhibit "CC") and advised that the Planning Board was the lead agency, SEQRA remains open and the additional information requested has not yet been furnished.  By letter dated November 19, 1993, Mehlon's then attorney wrote to the DEC with copy to the Planning Board (Exhibit "DD") requesting a redesignation and that the DEC assume SEQRA lead Agency status.  She maintained that as a result of the amendment of ECL §23-2703 in 1991, which restricted the kinds of performance standards that a town may impose upon a mine through the special use permit process, the Town Zoning Law is inconsistent with what is now allowed, it is unenforceable and it does not now have the jurisdiction to seek lead agency status.

43.    The Planning Board, in turn, wrote to the DEC by letter dated December 6, 1993, responding to Mehlon's counsel's November 19, 1993 letter (Exhibit "EE"), responding that:

> First, it is our understanding that despite the preemption contained in ECL 23-2703, our local permit jurisdiction remains as to areas noted in Ms. Zeisel's letter.
>
> Second, despite the above, it has been the recent practice of the Planning Board to suggest that the DEC assume Lead Agency status for the SEQR review of a mining application.  For the past few years, we have referred an applicant to the DEC for both <u>coordinated</u> SEQR review and for procurement of the Article 23 permit.  The applicant then returns to our Board for a public hearing and decision on the Special Use permit application which is limited to consideration of the issues left to local jurisdiction in light of the amendment to the State statute.

Third, on June 26, 1989 the Planning Board convened a public hearing. Many area residents voiced concerns relative to traffic (including the impacts to all of the Kings Hill Road surface), noise, dust, blasting and water tables. Moreover, copies of various letters, including our Town Planner's report dated July 26, 1989 were sent to Ms. Zeisel in December 1991 shortly after you were advised that she was now representing Mr. Mehlon.

Therefore, Ms. Zeisel is incorrect with her assertion that the Town's primary concern related only to that portion of Kings Hill Road which crosses the New York City Aqueduct.

So that you may develop the proper background for this matter, we enclose copies of our attorney's December 6, 1991 letter to Ms. Zeisel as well as all of the enclosures listed in that letter.

The Town of Montgomery Planning Board has no objection to the DEC assuming Lead Agency status, however, we respectfully request that the SEQR review be coordinated as there exist several important issues which must be addressed in connection with this matter.

44.    The DEC responded to Mehlon's then counsel and to the Planning Board by letter dated March 18, 1994 (Exhibit "FF"). The DEC concluded that based upon the information provided by Planning Board Chairman Kelly, the DEC did not believe it necessary to change the lead agency. In a letter dated April 25, 1994 from Mehlon's then counsel to the Planning Board (Exhibit "GG"), she requested a meeting to review the status of the SEQRA process. Following this, Mehlon's engineering firm, Wehren Engineering, filed for and was declared bankrupt.

45.    Mehlon found that designing and building a bridge over the New York City acqueduct would be prohibitively expensive and to operate trucks with substantially reduced payloads that might permit crossing the acqueduct without building a bridge was economically unfeasible. On May 2, 1996, Mehlon wrote to the Supervisor of the adjacent Town of Newburgh regarding its property located on Kings Hill Road that is just over the Town of Newburgh line (Exhibit "HH"). He explained that Kings Hill Road runs from Rock Cut Road in the Town of Newburgh into and through the Town of Montgomery. In the Town of Montgomery, Kings Hill Road traverses the New York City aqueduct over which there is restricted truck travel. He continued that this has resulted in ingress and egress to its property over that portion of Kings

Hill Road in the Town of Newburgh. There is, however, he noted, a 3-ton weight restriction on

Kings Hill Road in the Town of Newburgh. He offered to assist in upgrading the road to meet

any safety issues the Town might have and indicted that Mehlon was anxious to resolve the issue

so that it may use this road as a means of ingress and egress to its property.

### DEC FINES MEHLON FOR ABANDONING MINE AND IS DESIGNATED LEAD AGENCY FOR SEQRA REVIEW

46.    By 1998 it had been some 12 years since the DEC Mining Permit had not been

renewed and reissued and the DEC began pressuring Mehlon to reclaim the property. Mehlon

still was obligated to reclaiming the original mining operation for which the DEC had issued a

Permit in 1983 to the prior owner. ECL §71-1305 of the MLRL made it a crime to abandon a

mine before all affected land had been reclaimed. But Mehlon was unable to reclaim the land

without completion of the SEQRA process and issuance of the SEU Permit by the Planning

Board and then the issuance of a DEC mining permit.

47.    ECL §23-2705, the definitions section of the MLRL, defines the terms "mine"

and "mineral":

> 5. "Mine" means any excavation from which a mineral is to be produced
> for sale or exchange, or for commercial, industrial or municipal use; all
> haulageways and all equipment above, on or below the surface of the ground used
> in connection with such excavation, and all lands included in the life of the mine
> review by the department.

> 7. "Mineral" means any naturally formed, usually inorganic, solid material
> located on or below the surface of the earth. For the purposes of this title, peat and
> topsoil shall be considered minerals.

48.    A letter from the DEC to Mehlon dated August 6, 1999 stated that it had not

received a response to its Notice of Incomplete Application for renewal of the Mined Land

Reclamation Permit which expired in 1986 (Exhibit "II"). The DEC claimed it "has made

numerous attempts to assist you in bringing the site into compliance with the Mined Land

Reclamation Law" and has determined that your actions and failure to respond have constituted

-16-

abandonment of a mine, a violation of 71-1305(3) of the Environmental Conservation Law and Section 422.3(e) of 6NYCRR 422.3."

49.    Mehlon then hired a new engineering firm, Vincent J. Doce Associates ("Doce Associates"), and current legal counsel.  During July and August, 1998, Mehlon's new engineer, Doce Associates, and current legal counsel prepared a revised and updated Mined Land-Use Plan and the engineer prepared a Property Boundry and Existing Site Conditions survey plan.  They were submitted to the DEC, together with a new Mining Permit Application for the same 18.1 acres (Exhibit "JJ").  This 1998 Mining Permit Application also sought reclamation of the original mining operation that DEC had permitted in 1983 but which Mehlon could not reclaim.

50.    The Mining Permit Application (Exhibit "JJ") provided for 159.9 total acres, of which 4 acres were currently affected, 14.1 acres were included in the application but not previously approved, and a total of 18.1 acres to be reclaimed during the coming permit term.  The Mining Permit Plan contained the affirmation of Mehlon as owner of the mineral rights of the property to be mined that,

> I have read the contents of the Mined Land Use Plan, which sets forth the applicant's mining and reclamation plan for the property to be mined, and I irrevocably consent and agree to the performance of the Mined Land Use Plan by the applicant, his surety or insurer or the NYS Department of Environmental Conservation.  I further agree to allow access to the property to department personnel for the purpose of conducting inspections or investigations in the regular course of their duties.

51.    The DEC, by letter dated November 19, 1998 captioned "Mined Land Reclamation", with copies to the Planning Board and Towns of Montgomery and Newburgh Supervisor (Exhibit "KK"), declared that the 1998 Mining Permit Application appeared to be essentially the same as the 1988 Mining Permit Application and was incomplete pending a Determination of Significance under SEQRA by the Planning Board as lead agency.  Significantly, the letter continued that, "However, if you can demonstrate that the Town of Montgomery Planning Board no longer has jurisdiction over your project, or if the Town

Planning Board no longer desires to serve as Lead Agency, DEC is willing to assume the SEQR

responsibility of Lead Agency." The letter then requested that the DEC's staff technical review

of the most recent plans indicated a number of details and clarifications were needed and

requested a review meeting with Mehlon's consultant.   DEC's staff and Mehlon's engineer met

and Mehlon addressed the details and clarifications that had been requested.  Mehlon's engineer

also met with Town of Montgomery officials and the Planning Board and their consultants.

52.    The Montgomery Town Attorney wrote to Mehlon's current counsel on June 22,

2001 (Exhibit "LL") stating that Mehlon's former counsel, Laura Zeisel, had had a meeting with

Town representatives on August 16, 1994 "but nothing concrete ever came out of that meeting."

He also related that "the 1989 Planning Board request regarding a revised Long EAF

w/Appendices remains outstanding and, therefore, SEQRA remains open". He continued,

> I also note that the public hearing was held on June 16, 1989,
> almost 12 years ago.  I suspect, but have not confirmed, that the Planning
> Board would not be comfortable proceeding without first having another
> public hearing.  Also, the issue of Lead Agency needs to be clarified.  As
> mentioned to you, the Planning Board has had a policy for the last 10
> years or so regarding mines to have the DEC handle SEQRA and issue
> their ECL permit and then the Planning Board issue its own local
> approvals.
>
> Let me know when you are ready to revive this longstanding,
> inactive file.

53.    In a letter dated July 19, 2001 to the DEC, Mehlon's current legal counsel

requested a compliance conference with the DEC (Exhibit "MM").  The letter related that:

> I am happy to report that a major hurdle to my client's moving
> forward with its permit application has been resolved.  Enclosed for your
> file please find a copy of the Town of Newburgh Local Law No. 4 of 2001
> which removes the weight restrictions for Kings Hill Road in the Town of
> Newburgh from Rock Cut Road to the Montgomery Town line.  My
> clients proposed mine expansion is located entirely within the Town of
> Montgomery but will utilize Kings Hill Road from its property to Rock
> Cut Road.  Local Law No. 4 resolves all objections from the Town of
> Newburgh for my clients' proposed mining expansion permit.  My client
> has also proceeded to discuss this matter further with Rob Martin of the
> New York State DEC and the Town of Montgomery Planning Board

concerning proceeding on the approvals required for expanding its mine. I
hope that at our compliance conference we can discuss all the parameters
needed to resolve all issues and incorporate the same into an agreement
between the DEC and my client.

A copy of Town of Newburgh Local Law No. 4, which includes, at the request of Mehlon

Trucking, removing the weight restriction on Kings Hill Road in the Town of Newburgh

adjacent to Mehlon's property in the Town of Montgomery to Rock Cut Road in the Town of

Newburgh and all major state highways, is annexed as Exhibit "NN".

54.    In a letter to the Planning Board attorney, Richard Hoyt, dated August 8, 2001

(Exhibit "OO"), Mehlon's current legal counsel related that as they had discussed by telephone

the Town of Newburgh has removed the weight limit restriction on the Town of Newburgh

portion of Kings Hill Road from Rock Cut Road to the Montgomery town line and he enclosed a

copy of the local law. He states that highway access was the "key issue" to be resolved before

Mehlon could proceed with its applications before the Planning Board and DEC to expand its

Kings Hill Road mine. He suggests to the Planning Board attorney that, consistent the Planning

Board's practice over the past ten years that the Planning Board refer to the DEC lead agency

status to handle the SEQRA review. Then, he continues, "Once the same is completed our client

could return to the Town of Montgomery Planning Board with those items in hand for the

Planning Board's review of our application."

55.    At a meeting of the Planning Board held August 27, 2001, the minutes (Exhibit

"PP") reflect that:

> [Town] Attorney Hoyt stated Mehlon Mine up on Kings Hill,
> about ten years ago this Board resolved to be Lead Agent. Since that time
> it has been the practice of the Board to let the D.E.C. do their thing, and
> then you held a Public Hearing, the applicant having satisfied the D.E.C.
> The D.E.C. will not act on Mehlon's application any further because they
> have a letter from you from 10 years ago where you said you will do
> SEQRA. They told Mr. Mehlon to have the Planning Board do it, or have
> the Planning Board send a letter giving up that jurisdiction. They will do
> it. Either way, I would advise the applicant's Attorney, it's my sense that
> you will want to go back to another Public Hearing. It's been 10 or 11
> years, and the room was quite full at the time, in the old Town Hall.

Planning Board Chairman Anthony E. Trapini stated it's to send a letter to the D.E.C. stating that they be the Lead Agency.

Attorney Hoyt stated and refer the matter back to your Board when they are done.

Motion by Board Member Kelly, seconded by Board Member Crist to send the D.E.C. a letter stating that the D.E.C. be Lead Agent. All in Favor – All Ayes –Motion Carried.

56.    Chairman Trapini, in his letter to Mehlon's counsel dated September 7, 2001

(Exhibit "QQ"), stated:

At its regularly scheduled Planning Board meeting of August 27, 2001, the Planning Board duly resolved to allow the DEC to be Lead Agency for the Environmental Review for the Mehlon Mine project.

The Board asks that you keep the Planning Board apprised of the status of this application as you undergo your review and that you refer it back to the Planning Board upon completion of your review.

57.    On February 26, 2002, Mehlon and the DEC signed an Order on Consent

regarding the DEC's March 1, 2001 determination that Mehlon had, under the MLRL,

abandoned a mine. A copy of the Order on Consent and a copy of Mehlon's $3,000.00

check to the DEC as the civil penalty are annexed as Exhibit "RR". The Order on

Consent provided that as corrective action that Mehlon has submitted a Mined Land

Reclamation permit application to the DEC and if local permits cannot be acquired, then

Mehlon shall "complete reclamation of all affected areas within 2 years of the approval of

the reclamation plan."

THE DEC SEQRA REVIEW AND NEGATIVE DECLARATION

58.    Mehlon's current engineer, Doce Associates, prepared a revised and updated

Mined Land-Use Plan, which also included a Property Boundary and Existing Site Conditions

survey plan and Drainage, Erosion & Sediment Control Plan. This revised and updated Mined

Land-Use Plan, which was dated July 1988 and was revised in July 1998 and March 2003, was

submitted to the DEC.  A full EAF dated March 10, 2003 was also submitted to the DEC.

Copies are annexed as Exhibit "SS".

59.    A Notice of Complete Application for the shale removal operation pursuant to

Article 23, Title 27, Mined Land Application, was issued by the DEC on February 8, 2005

(Exhibit "TT").  It provided that:

> Applicant proposes to operate an 18.1 acre shale mine within a
> 159.9 acre parcel located east of Plains Road and north of Kings Hill
> Road.  A four acre portion of this proposed site has been mined
> previously under a permit issued by NYDEC.  It is estimated that
> approximately 820,000 cubic yards of material will be removed.
> Processing (crushing and screening) of material is proposed using
> portable equipment.  Blasting will be required approximately twice a
> month.  Hours of operation will be 8 am to 4:30 pm Monday – Friday
> and 8 am to 300 pm on Saturdays.

60.    The Notice of Complete Application contained a "State Environmental Quality

Review (SEQR) Determination" which stated that "Project is a Type I action and will not have a

significant effect on the environment.  A coordinated review with other involved agencies was

performed and a Negative Declaration is on file."  The Notice also provided that public

comments on the project must be submitted in writing no later than March 25, 2005.  Copies of

the Notice were provided to the Supervisor of the Town of Montgomery and to the Town of

Montgomery Planning Board.

61.    The SEQR Negative Declaration was also dated February 8, 2005 (Exhibit "UU")

and copies were sent to the Town of Montgomery Supervisor and Planning Board.  In addition to

the information contained in the Notice of Application, it addressed Cultural Resources, Visual

Resources, Water Resources, Natural Resources, Traffic and Mining Operations.

62.    The Negative Declaration provided that "Shale will be removed by ripping,

drilling and blasting"; that "Mining is anticipated to continue for 15 years"; and that "The project

will result in the removal of deciduous forest from approximately 14 acres of the proposed site.

Portions of the mine may be visible from individual residences.  However, the nearest residences

-21-

to the site (500 feet) to the east are located below a crest of the mine site which will remain undisturbed and provide a visual screen. In addition, an undisturbed woodland buffer around the mine area will provide further visual screening for adjacent parcels. Upon completion of mining, reclamation of the site will restore vegetation."

63.     The Negative Declaration also provided that "A stormwater runoff management plan has been prepared and meets State requirements for coverage under the State's SPDES General Permit for Industrial Activities. This plan demonstrates that stormwater quantity and quality can be managed and controlled."

64.     The Negative Declaration further addressed traffic and determined that "Mining operations will result in an average of six to twelve trucks per day entering and leaving the property. This small volume of traffic will not adversely impact area traffic flow. A new mine access road location will substantially improve site distance on Kings Hill Road to minimize safety concerns."

65.     The Negative Declaration lastly addressed other mining operations and determined that "Blasting will be done in accordance with federal regulations by a certified blaster. Impacts of blasting are not expected to affect adjoining properties due to the ability to design blasts based upon known scientific calculations applied to evaluate blasting impacts"; that "The mining operator has volunteered to conduct pre-blast surveys of nearby dwellings and structures along with other mitigation measures"; that "Dust will be controlled using proven methods such as watering of haul roads, re-vegetation of long term stockpiles and minimizing exposed areas through concurrent reclamation"; and that "Noise levels have been evaluated and determined to result in expected, acceptable levels of 55db at the closest residences. Additional mitigation of noise levels can be implemented through proven methods such as berms if necessary. The undisturbed mature vegetation to be maintained around the mine will also provide noise mitigation."

ISSUANCE OF THE DEC MINED LAND RECLAMATION PERMIT

66.    Together with its cover letter dated April 12, 2005 (Exhibit "VV"), the DEC sent to Mehlon copies of the comment letters it had received in response to the public notice on its Mine Land Reclamation Permit (Exhibit "WW" and Exhibit "XX"). It invited Mehlon's response.

67.    The comment letters annexed as Exhibit "WW", upon information and belief, come from the residents of the area, including a number that appear to be identical in content from the "residents of Grand View Estate". They range from being concerned to demanding a public hearing to "No! No! No! We don't want an[y] shale mined or blasting."

68.    Exhibit "XX" was a letter from the Town of Montgomery Supervisor dated March 17, 2005, with copies to the Town Board members, Planning Board members and Building Inspector. Annexed was a memo from the Building Inspector dated March 16, 2005 addressed to the Town Supervisor and Town Board members regarding "Mehlon Trucking – DEC Inquiry". The Supervisor's letter preliminarily stated that the DEC Notice of Complete Application has been review by the Town Board, Town Attorney, Town Engineer, Town Planner and Town Building Inspector. It continued that the proposed use "no longer" was allowed in the zoning district where the property was located (despite the Zoning Law for SEU Permit for temporary removal of sand and gravel not having changed since Mehlon's application) and a zoning variance would have to be obtained by Mehlon.

69.    The memo of the Building Inspector, Debbie Walsh, attached to the Supervisor's letter as Exhibit "XX", relates that she can find no paper work that the Planning Board has issued a SEU Permit to Mehlon. She continues by making the statement some 17 years after the fact that the Planning Board wrongly directed Mehlon to apply for, accepted and held a hearing for a SEU Permit when it should have directed Mehlon to instead apply to the Zoning Board of Appeals for a variance and, in addition, that Mehlon somehow "abandoned" its Application. Her

memo continued:

> The file does not show that the applicant, Mehlon Trucking, was seeking a SEU [Permit] for a shale operation in August of 1988. The Planning Board at that time was calling it a temporary sand and gravel operation which would have been an incorrect description of the project.

> Since no SEU was granted and the application was abandoned, Mehlon Trucking will be required to start from the beginning as a new application under today's zoning.

> Today's zoning allows a temporary sand and gravel operation in all zones, but a quarry for shale removal is only allowed in the industrial zones. It is my opinion that Mehlon Trucking would be required to seek a use variance from the Zoning Board before placing an application to the Planning Board.

70.    Mehlon's engineer, Doce Associates, responded to the public comments by letter dated September 1, 2005 (Exhibit "YY"), addressing the issues raised. The letter then offered a point-by-point rebuttal to the Town Supervisor's letter. The letter stated that:

> As for road maintenance issues, our client has entered into an agreement with the Town of Newburgh to co-inspect the roadway for damage for a period of six months following the inception of mining operations, and again at one year. In a letter dated January 26, 2001 to the Town of Newburgh Supervisor's Office, Mehlon Trucking agreed to perform any maintenance suggested by the Town Highway Superintendent following those inspections.

After addressing other issues, the letter concluded by saying that:

> [Supervisor] Cockburn repeatedly stresses the need for extensive restructuring to areas of the plan concerned with safety, water issues, noise issues, and vibration control issues. We maintain that the information contained in our plan is more than sufficient to address all these areas of concern.

71.    The DEC then wrote to the Supervisor on October 24, 2005 (Exhibit "ZZ") informing that it had considered all the public comments, including the comments made by the Town of Montgomery, and had made a decision to renew and reissue a mining permit to Mehlon, including the expansion of the acreage for which it had applied. It enclosed copies of DEC's proposed draft permit and Mehlon's engineer's September 1, 2005 response letter to the public

comments.

72.    The DEC's October 24, 2005 letter to Mehlon regarding the Draft Mined Land Permit, with a copy of the Draft Permit, is annexed as Exhibit "AAA".  The Draft Permit contained 14 special conditions, that included the mining operations that comprised almost all of the Town Supervisor's comment letter to the DEC dated March 17, 2005 (Exhibit "XX").  The Draft Permit also required that Mehlon keep and maintain a bond or surety that shall not be terminated until reclamation is approved by the DEC.  The DEC, by letter dated October 25, 2005 (Exhibit "BBB"), approved Mehlon's assignment of a $60,000.00 certificate of deposit to cover its reclamation liability.

73.    By Notice to Mehlon dated November 21, 2005, the DEC informed Mehlon that the Permit dated November 21, 2005 was enclosed and that the project qualifies for coverage under the General Stormwater SPDES Permit.  The cover letter and Mined Land Reclamation Permit, both dated November 21, 2005, which were copied to the Town of Montgomery Supervisor and Planning Board, are annexed as Exhibit "CCC".  The 14 Special Conditions that had been annexed to the Draft Permit were also annexed to the Mined Land Permit.

74.    The consent order Mehlon signed with the DEC to reclaim the mine (Exhibit "RR"), requires reclamation be completed within two years of issuance of the Mined Land Reclamation Permit, or November 21, 2007.  Noncompliance with the DEC consent order results in stipulated penalties imposed only by notice of noncompliance served on Mehlon at the rate of $50.00 each day for the first 30 days, $100.00 each day for the next 30 days and $200.00 each day thereafter.  Mehlon cannot comply with the DEC consent order for reclamation without an SEU Permit from the Planning Board.  Mehlon also risks for reclamation noncompliance its $60,000.00 certificate of deposit posted as a condition of issuance of the DEC Mined Land Reclamation Permit.

REFUSAL OF PLANNING BOARD TO MAKE DECISION ON SEU PERMIT

75.    Hearing nothing further from the Planning Board regarding Mehlon's pending application for the SEUP Permit, Mehlon's counsel wrote to Planning Board Chairman Trapini by letter dated July 17, 2006 (Exhibit "DDD"). Counsel related that the Planning Board accepted Mehlon's application for a SEU Permit, held a public hearing on the application and referred the matter to the DEC who acted as lead agency for the SEQRA review process. The DEC issued a negative declaration for the SEQRA review process and issued a DEC mining permit, copies of which were enclosed. Counsel then requested Mehlon's return to the Planning Board "to finalize its application for its Special Use Permit".

76.    Environmental Conservation Law §23-2703(2) of the MLRL provides that that title shall supersede all other state and local laws relating to the extractive mining industry, provided that nothing in that title shall be construed to prevent any local government from (1) enacting or enforcing local laws or ordinances of general applicability, except that such local laws or ordinances shall not regulate mining and/or reclamation activities regulated by state statute, regulation, or permit, or (2) enacting or enforcing local zoning ordinances or laws which determine permissible uses in zoning districts where mining is designated a permissible use in a zoning district and allowed by special use permit, and then only as to defined limited conditions, (3) enforcement of reclamation requirements contained in mined land reclamation permits issued by the state enacting or enforcing local laws, or (4) ordinances regulating mining or reclamation of mines not required to be permitted by the state.

77.    The completion of the SEQRA process, issuance of the Negative Declaration and issuance of DEC Mined Land Permit with conditions attached, and agreement with the adjacent Town of Newburgh for town road usage to state highways and inspection and maintenance of the town road complies with all Town of Montgomery local laws and ordinances of general applicability and the defined limited conditions permitted by the MLRL and satisfies all of the

-26-

requirements raised by the Planning Board in connection with Mehlon's application submitted in

1988 for the grant of the Special Exception Use Permit for Temporary Removal of Sand and

Gravel.

78.    The Planning Board Chairman responded to Mehlon's counsel by letter dated July

26, 2006, which in its entirety stated:

> The Planning Board is in receipt of your July 17, 2006 letter
> concerning the referenced Lands of Mehlon Trucking, Inc.
>
> Enclosed please find copies of the determination by the Town of
> Montgomery Building Department, along with a letter from the
> Supervisor of the Town, with enclosures.

A copy of the July 26, 2006 letter with enclosures is annexed as Exhibit "EEE".

79.    The enclosures that accompanied Chairman Trapini's July 26, 2006 letter were

the same written comments that had been prepared and submitted by the Montgomery Town

Supervisor and Town Building Inspector to the DEC, copies of which are annexed as Exhibit

"XX".  In substance, the Supervisor's letter dated March 17, 2005 alleged that Mehlon's

"proposed use no longer was allowed in the zoning district where the property was located and a

zoning variance would have to be obtained".  The Building Inspector's memo dated March 16,

2005 in substance alleges that Mehlon's application for a SEU Permit was "abandoned" and

today's zoning allows a temporary sand and gravel operation in all zones, but a quarry for shale

removal is allowed only in the industrial zones and, since Mehlon's property is not in an

industrial zone, it is her opinion that Mehlon would be required to seek a use variance from the

Zoning Board before placing an application to the Planning Board.

80.    The Town of Montgomery Zoning Law that was in effect when Mehlon submitted

its application for a SEU Permit for temporary removal of sand and gravel in 1988, the Zoning

Law enacted in 1981, when the Planning Board had directed Mehlon to apply for a SEU Permit

for temporary removal of sand and gravel operation, also provided for a SEU Permit for a quarry,

a copy of which is annexed as Exhibit "FFF". A SEU Permit for a quarry was allowed only in certain industrial zones where Mehlon's property was not located and would require a variance from the Zoning Board of Appeals. The subsequent Zoning Law enacted in 1999 provided for a SEU Permit for a quarry, a copy of which is annexed as Exhibit "GGG", and the current Zoning Law effective May 18, 2006 provides for a SEU Permit for a quarry, a copy of which is annexed as Exhibit "HHH". None of the substantive special conditions provisions relating to the SEU Permit for a quarry have changed in the Zoning Laws and they have since 1981 always been allowed only in certain industrial zones where Mehlon's property was not located.

81.     The Town of Montgomery Zoning law, since 1981, has never contained a definition of the terms "quarry", "shale", "sand" or "gravel".

82.     The Town of Montgomery Zoning Law that was in effect when Mehlon submitted its application for a SEU Permit for temporary removal of sand and gravel operation in 1988-- the Zoning Law enacted in 1981-- provided that the "Planning Board shall have original jurisdiction and power to grant a permit for a special exception use on a particular site wherever it is expressly provided in this Local Law that the special exception may be granted upon application to the Planning Board without a finding of practical difficulties or unnecessary hardship". The Zoning Law for special exception uses enacted in 1981 also set forth guiding principles and general standards. A copy is annexed as Exhibit "III". The subsequent Zoning Law enacted in 1999 as it pertained to original jurisdiction, guiding principles and general standards for special exception uses, a copy of which is annexed as Exhibit "JJJ", and the current Zoning Law effective May 18, 2006, as it pertains to original jurisdiction, guiding principles and general standards for special exception uses, a copy of which is annexed as Exhibit "KKK", are the same.

83.     Mehlon's counsel responded to the Planning Board Chairman's July 26, 2006 letter by its letter dated November 15, 2006 sent by certified mail, return receipt. The letter, a

-28-

copy of which is annexed as Exhibit "LLL", requested that the Planning Board make a

determination on Mehlon's pending application stating, in pertinent part, that:

First, in response to your said July 26, 2006 letter and its enclosures, the applicant did not abandon the Application and the Building Inspector, in her March 16, 2005 memorandum, had no basis for concluding that the applicant had abandoned the Application. Indeed, the Supervisor's letter which was prepared to comment on the then pending DEC application for a mining permit does not mention that the applicant "abandoned" its Application.

I would bring to your attention that, during the previous 18 years, action on this application had been delayed due to, among other things, a claim that the subject portion of the property was actually located in an adjacent town, litigation by an adjacent property owner who claimed ownership of the property, the bankruptcy of the applicant's engineering company, and Planning Board inaction as lead agency under the SEQRA review for a DEC mining permit.

The Planning Board presently has pending before it the Application and the applicant is entitled to the Planning Board's determination to accept or reject it. Your July 26, 2006 letter conveys no such determination of the Planning Board. You are hereby requested to render a determination.

Second, we would urge the Planning Board to issue the Permit. The Building Inspector's memorandum of March 16, 2005 correctly states that, "Today's zoning allows a temporary sand and gravel operation in all zones, but a quarry for shale removal is only allowed in the industrial zones." However, what she fails to state is that such had been the zoning law in 1988 when the Application was submitted and has been the zoning law ever since. Prior to filing the Application for a "shale mine" on part of the subject premises for a finite period of time, the Planning Board had directed the applicant to submit the application as a temporary sand and gravel operation and not as a quarry for shale. The applicant has followed that directive, relied upon it and has expended hundreds of thousands of dollars in relying on it. Even had such direction been incorrect-and we are not suggesting that it was-during the past 18 years the Planning Board has ratified its action and cannot now be heard to suggest that such direction may have been incorrect.

Demand is hereby made of the Planning Board for a determination of the applicant's pending Application within twenty (20) calendar days. It appears clear to us that the Application must be granted and the Permit issued. If the Application is denied, it is the applicant's intention to commence an Article 78 proceeding and, inter alia, seek monetary damages for the Planning Board's malicious and bad faith intent to injure the applicant based on the substantive merit of its application and the Planning Board's actions.

I look forward to your response.

84.    The Town of Montgomery Zoning Law that was enacted in 1981 and was in

effect when Mehlon's application for SEU Permit for temporary removal of sand and gravel was submitted, provided at §130-40-40.40 that failure of the Planning Board to take action on a special exception use within 45 days following the public hearing – which may be extended by the Planning Board for a specified time not to exceed six months – shall be construed as approval of such use by the Planning Board.  A copy of the Special Exception Use Procedure that included that section in the Zoning Law enacted in 1981 is annexed as Exhibit "MMM".  That section of the Zoning Law was replaced by the Zoning Law enacted in 1999 and reenacted in 2006, and provides that, "Unless otherwise superceded [sic], the provisions of Town Law 274-a and 274-b shall control the Special Exception Use and Site Plan permitting jurisdiction of the Planning Board."  Copies of §130-40-40.40 in the 1999 Zoning Law and the 2006 Zoning Law are respectively annexed as Exhibit "NNN" and Exhibit "OOO".

85.     No response was received to Mehlon's counsel's November 15, 2006 letter to the Planning Board.   Upon information and belief, no vote has ever been taken by the Planning Board on Mehlon's application and no Planning Board decision has been rendered on the application or filed with the Town of Montgomery Clerk.

86.     Mehlon has expended in excess of $200,000 in connection with its efforts to obtain a SEU Permit.

CONCLUSION

87.     Mehlon has demonstrated that its use complies with the applicable special use permit criteria for temporary sand and gravel removal operation.  Since no reasonable grounds have been adduced for denying the permit that is supported by substantial evidence, it is an abuse of the Planning Board's discretion to fail to issue the permit and it must be granted.  Under the circumstances constructive approval of the SEU Permit is appropriate.  The appropriate remedy is to compel the Planning Board to issue the SEU Permit.

88.     Should the Court remand the application to the Planning Board, it should order

that the Planning Board is equitably estopped to deny Mehlon its SEU Permit for temporary sand and gravel removal operation.

89.     Town of Montgomery Zoning Law §130-40-30.35, QUARRY:  MINING, LOADING, HAULING AND/OR PROCESSING OF SAND, GRAVEL, SHALE, FILL OR TOPSOIL, has furthermore been superseded by the MLRL and is and should be declared invalid.

90.     Alternatively, the Planning Board should be compelled by the Court to render a decision on Mehlon's application for SEU Permit.

<u>FIRST CAUSE OF ACTION</u>

91.     Mehlon repeats and realleges the allegations contained in paragraphs "1" through "90" of the Verified Petition and Complaint, as if fully set forth herein.

92.     The SEQRA review process has been completed and a Negative Declaration determining environmental non-significance has been issued.

93.     The DEC has reissued to Mehlon a Mined Land Permit for the shale removal operation for a period of 15 years and Mehlon has posted the bond required by the Mined Land Permit to assure compliance with its conditions.

94.     The conditions the DEC has annexed to the Mined Land Permit regulate and control the operation, including the methods of removal, vegetation restoration, storm water runoff management, noise, vibration, dust, nearby residences, traffic flow and safety.

95.     Mehlon has entered into an agreement with the adjacent Town of Newburgh to traverse the Town of Newburgh's town road to state highways and to have it inspected and maintained.

96.     The Planning Board's failure or refusal to make a determination respecting Mehlon's application for a Special Exception Use Permit for temporary removal of sand and gravel operation is arbitrary and capricious and contrary to law and an abuse of discretion.

97. Based on the foregoing demonstrating that Mehlon's use complies with the applicable special use permit criteria and since no reasonable grounds have been adduced for denying it that is supported by substantial evidence, the permit must be granted. Mehlon is entitled to an order of mandamus for approval compelling and directing the Planning Board to prepare, file and provide to Mehlon a written determination of Mehlon's application granting a Special Exception Use Permit for temporary removal of sand and gravel, or in the alternative for a determination on its application.

<u>SECOND CAUSE OF ACTION</u>

98. Mehlon repeats and realleges the allegations contained in paragraphs "1" through "90" of the Verified Petition and Complaint, as if fully set forth herein.

99. Section 274-b(6) of the Town Law provides that in the event of an application for special use permit required by ordinance or local law adopted by the Town Board, the authorized board, which in this case is the Planning Board, shall conduct a public hearing within 62 days from the day an application is received and shall make a decision on the application within 62 days after such hearing, unless extended by mutual consent.

100. Section 130-40-40.40 of the Town of Montgomery Zoning Law provides that unless otherwise superseded, the provisions of Town Law Section 274-b shall control the Special Exception Use permitting jurisdiction of the Planning Board and Section 274-b(6) has been superseded only to the extent that the requirement that every decision of the Planning Board shall be filed with the Town Clerk within five (5) business days of the date such decision is rendered shall be deemed to be the date such written decision is approved by resolution of the Planning Board.

101. On June 26, 1989 the Planning Board held a public hearing on the Draft Environmental Assessment Form and on Mehlon's application for Special Exception Use Permit.

102.    At the conclusion of the June 26, 1989 Planning Board public hearing, the public hearing was closed upon vote of the Planning Board.

103.    More than 62 days have expired since the hearing on Mehlon's application for Special Exception Use Permit approval and the Planning Board has failed to rule on Mehlon's application.

104.    The Planning Board's adjournment of its decision on the Special Exception Use Permit application since the completion by the DEC of the SEQRA process and issuance of a Negative Declaration and Mined Land Permit on November 21, 2005 and failure over more than 485 days since to inform Mehlon what, if anything, additional it requires is unreasonable and arbitrary and capricious.

105.    A timely decision on Mehlon's Special Exception Use Permit application following a hearing on such application is a mandatory duty imposed pursuant to Section 274-b(6) of the Town Law and imposed pursuant to Section 130-40.40 of the Town of Montgomery Zoning Law.

106.    Based on the foregoing, Mehlon is entitled to an order of mandamus constructively approving its application for Special Exception Use Permit for temporary removal of sand and gravel operation pursuant to Town of Montgomery Zoning Law §130-40-30.43 and compelling and directing the Planning Board to issue the permit.

<u>THIRD CAUSE OF ACTION</u>

107.    Mehlon repeats and realleges the allegations contained in paragraphs "1" through "90" of the Verified Petition and Complaint, as if fully set forth herein.

108.    The Planning Board is estopped to deny Mehlon its Special Exception Use Permit for temporary sand and gravel removal operation is appropriate.

109.    Estoppel should be imposed against the Planning Board in this case.

110.     Based on the foregoing, Mehlon is entitled to an order of mandamus estopping the Planning Board from taking any different action and compelling and directing the Planning Board to prepare, file and provide to Mehlon a written determination of Mehlon's application granting a Special Exception Use Permit for temporary removal of sand and gravel operation, or, in the alternative, for a determination on its application.

FOURTH CAUSE OF ACTION

111.     Mehlon repeats and realleges the allegations contained in paragraphs "1" through "90" of the Verified Petition and Complaint, as if fully set forth herein.

112.     Town of Montgomery Zoning Law §130-40-30.35, QUARRY: MINING, LOADING, HAULING AND/OR PROCESSING OF SAND, GRAVEL, SHALE, FILL OR TOPSOIL, has been superseded and preempted by the State Mined Land Reclamation Law and is invalid.

113.     Based on the foregoing, Mehlon is entitled to an order declaring the said Town of Montgomery Zoning Law §130-40-30.35 invalid and an order of mandamus compelling and directing the Planning Board to prepare, file and provide to Mehlon a written determination of Mehlon's application granting a Special Exception Use Permit for temporary removal of sand and gravel operation or, in the alternative, for a determination on its application.

FIFTH CAUSE OF ACTION

114.     Mehlon repeats and realleges the allegations contained in paragraphs "1" through "90" of the Verified Petition and Complaint, as if fully set forth herein.

115.     The Planning Board has deliberately engaged in a course of conduct refusing to inform what, if anything, remains to be done before it makes its determination on the Special Exception Use Permit Application and has repeatedly refused to issue a determination on the Application.

-34-

116.    The Planning Board has wrongfully alleged, despite any substantive or legitimate basis for such conclusion, that Mehlon has abandoned its Special Exception Use Application.  By taking the position that Mehlon has abandoned the application when it has not, the Planning Board has effectively, without stating its reasons, attempted to deny Mehlon an opportunity for judicial review.

117.    The Planning Board has also, in a purposeful and malicious abuse of the application process, after directing Mehlon to apply for a Special Exception Use Permit for the temporary removal of sand and gravel, then accepting the application, holding a public hearing and engaging in numerous meetings and communications over a period of more than 15 years, informed Mehlon that it incorrectly applied for a Special Exception Use Permit for the temporary removal of sand and gravel and should have applied for a Special Exception Use Permit for a quarry which is not allowed in the zone where Mehlon's property is located, and therefore will require a new application and a variance from the Zoning Board of Appeals.

118.    Respondents-defendants have willfully and maliciously refused to make a determination on Mehlon's Special Exception Use Permit application in violation of Mehlon's right to due process of law under the United States and New York State Constitutions and have proximately caused Mehlon to suffer damages in an amount to be determined.

<u>SIXTH CAUSE OF ACTION</u>

119.    Mehlon repeats and realleges the allegations contained in paragraphs "1" through "90" of the Verified Petition and Complaint, as if fully set forth herein.

120.    The Planning Board has failed to process and consider Mehlon's application for Special Exception Use Permit approval in a manner consistent with its treatment of other similar Special Exception Use Permit applications, a number of which were pending during the same time that the Mehlon application was pending.

121.    There is no substantive or legal basis for the discriminatory and disparate treatment of the Mehlon application as compared with other projects reviewed and approved by the Planning Board.

122.    The Planning Board has undertaken a SEQRA review process and Special Exception Use Permit process for Mehlon's shale removal operation that discriminates against the applicant in the time taken for such review and the unwillingness of the Planning Board to accept the completion by the DEC of the SEQRA review process, issuance of the Negative Declaration and issuance of DEC Mined Land Permit with conditions attached, and agreement with the adjacent Town of Newburgh for town road usage to a state highway and inspection and maintenance of the town road to satisfy the approval for the Special Exception Use Permit application. The process imposed upon the applicant has been far more onerous than other Special Exception Use Permit application projects in the Town of Montgomery.

123.    Such other projects involved a comparable level of SEQRA and Special Exception Use Permit standards to that of the Mehlon's shale removal operation and relied upon comparable analyses of SEQRA and Special Exception Use Permit standards to the analyses prepared for Mehlon's shale removal operation.

124.    The Planning Board's review of Mehlon's application has been motivated by malicious and bad faith intent to injure Mehlon and has not been based on the substantive merit of its application and supporting evidence and documentation, or the adequacy of the comprehensive environmental review conducted in connection with the long-pending Special Exception Use Permit application.

125.    Such discriminatory treatment violates the equal protection clause of the United States and New York State Constitutions and has proximately caused Mehlon to suffer damages in an amount to be determined.

WHEREFORE, petitioner-plaintiff respectfully requests an Order and Judgment granting the following relief:

(A)    On the first cause of action, granting an order of mandamus compelling and directing the Planning Board, within 20 calendar days, to prepare, issue, file and provide petitioner-plaintiff a written determination of its application granting a Special Exception Use Permit for temporary removal of sand and gravel operation, or in the alternative for a determination on its application;

(B)    On the second cause of action, granting an order of mandamus compelling and directing the Planning Board, within 20 calendar days, to issue, file and provide petitioner-plaintiff with a written determination of its application for Special Exception Use Permit for temporary removal of sand and gravel operation;

(C)    On the third cause of action, granting an order declaring the Planning Board estopped from taking any different action and granting an order of mandamus compelling and directing the Planning Board, within 20 calendar days, to prepare, issue, file and provide petitioner-plaintiff a written determination of its application granting a Special Exception Use Permit for temporary removal of sand and gravel operation, or in the alternative for a determination on its application;

(D)    On the fourth cause of action, granting an order declaring Town of Montgomery Zoning Law §130-40-30.35 invalid and granting an order of mandamus compelling and directing the Planning Board, within twenty (20) calendar days, to prepare, issue, file and provide petitioner-plaintiff a written determination of its application granting a Special Exception Use Permit for temporary sand and gravel or, in the alternative, for a determination on its application.

(E)    On the fifth cause of action, damages in an amount to be determined;

(F)     On the sixth cause of action, damages in an amount to be determined;

and for such other and further relief as to the Court may seem just and proper, costs and

legal fees.


Dated: Newburgh, New York
           March 28, 2007


WERNER & SAFFIOTI, LLP

By: _____
        JEFFREY RUSSELL WERNER
Attorneys for Petitioner-Plaintiff,
Mehlon Trucking Inc.
5031 Route 9W
Newburgh, New York 12550
(845) 562-3500

## VERIFICATION

STATE OF NEW YORK    )
                           ) ss.:
COUNTY OF ORANGE    )

LEON MEHL, being duly sworn, deposes and says:

I am the President of Mehlon Trucking, Inc., the petitioner-plaintiff in this combined Article 78 proceeding and action and have read the foregoing Verified Petition and Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters stated therein to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
LEON MEHL

Signed and sworn to this
28th day of March, 2007

_____
Notary Public
REBECCA SHAW
Notary Public, State of New York
No. 01SH6107401
Qualified in Ulster County
Commission Expires March 29, 2008

-39-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
------------------------------------------------------------------X
In the Matter of the Application of

      MEHLON TRUCKING, INC.,
                          Petitioner-Plaintiff,

For a Judgment Pursuant to Article 78
of the CPLR

         -against-                               **AFFIDAVIT**

THE PLANNING BOARD OF THE
TOWN OF MONTGOMERY and
EDWARD BEAUMONT as Chairman
of the Planning Board of the Town of
Montgomery,
                         Respondents-Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK     )
                        )ss.:
COUNTY OF ORANGE     )

      LEON MEHL, being duly sworn, deposes and says:

      1.      I make this affidavit in support of the captioned petition and complaint.  I am and

have been, at all pertinent times set forth in the captioned petition and complaint, the President of

Mehlon Trucking, Inc. (hereinafter "Mehlon").

      2.      Mehlon owns a parcel of land in the Town of Montgomery on which there has

been a shale mining operation since, upon information and belief, the late 1940's or early 1950's.

In 1983 the Department of Environmental Conservation ("DEC") issued to the prior owner of the

land and to Mehlon as the operator a State Mined Land Permit for a shale mine.  In 1988 Mehlon,

as the owner of the land, applied to the DEC to renew and reissue the State Permit and to expand

the size of the area to be mined on the land.

2.      I was advised by the Town of Montgomery Building Inspector that Mehlon was required to obtain a permit from the Planning Board.  Mehlon filed with the Town of Montgomery Planning Board an application for a special exception use permit for temporary removal of sand and gravel in 1988 and paid the requisite fee therefor.

3.      Upon information and belief, the Planning Board has never voted on, issued, or filed a determination or decision on the application.  Mehlon has never received a copy of a determination or decision on its application.

4.      Mehlon has never abandoned its application nor has it ever advised the Planning Board that it intended to abandon its application.

5.      On or about December 22, 1989, Mehlon received from the Town of Montgomery Building Inspector a Notice of Violation at its site for operating a quarry to load, haul and process shale without a special exception use permit from the Planning Board and a permit from the DEC.

6.      During the pendency of the application before the Planning Board, Mehlon was requested to design and construct a bridge over the New York City acqueduct in the Town of Montgomery that was substantial enough to support the weight of Mehlon's trucks loaded with material.

7.      Mehlon found that designing and building a bridge over the New York City acqueduct would be prohibitively expensive and to operate trucks with substantially reduced payloads that might permit crossing the acqueduct without building a bridge was economically unfeasible.

8.      At Mehlon's request, the 3-ton weight limit on Kings Hill Road through the Town of Newburgh, which is adjacent to its site, was removed and, together with Mehlon's agreement

with the Town of Newburgh to inspect and maintain the road, permits Mehlon's trucks access over Kings Hill Road in the Town of Newburgh to major state highways to transport its materials.

9.    On February 26, 2002, Mehlon and the DEC signed an Order on Consent regarding the DEC's March 1, 2001 determination that Mehlon had, under the Mined Land Reclamation Law, abandoned a mine and, as a result, Mehlon paid a $3,000.00 civil penalty. The Order on Consent provided that as corrective action that Mehlon has submitted a Mined Land Reclamation permit application to the DEC and if local permits cannot be acquired, then Mehlon shall complete reclamation of all affected areas within 2 years of the approval of the reclamation plan.  Noncompliance with the DEC consent order results in stipulated penalties imposed only by notice of noncompliance served on Mehlon at the rate of $50.00 each day for the first 30 days, $100.00 each day for the next 30 days and $200.00 each day thereafter.

10.    Mehlon has expended in excess of $200,000 in connection with its efforts to obtain a special exception use permit from the Planning Board.

11.    Since the SEQRA Negative Declaration has been issued, Mehlon has not requested or consented to an adjournment of the special exception use permit process before the Planning Board.

_____
LEON MEHL

Signed and sworn to this
28th day of March, 2007.

_____
Notary Public

REBECCA SHAW
Notary Public, State of New York
No. 01SH6107401
Qualified in Ulster County
Commission Expires March 29, 2008