# Exhibit "U" to
## Amended Verified Petition

Planning Board Meeting
Page 5
June 26, 1989

Mehlon Trucking - SEU Permit Application - Public Hearing

Mehlon Trucking Incorporated petitioned the Planning Board for a Special Exception Use Permit to request a permit to maintain and operate a temporary sand and gravel removal operation on a portion of the lands described as 3-1-96.22 and 3-1-86. The proposed project is located on Kings Hill Road. Affidavits of posting and mailing were submitted for the record.
Fran Geissler of Wehran Engineering made the presentation.
Mr. Calvano, area resident, asked the Board to explain Section: 130-40-30.34 and 60-10 (E).
Attorney Hoyt explained that on page 54 of the Zoning Law, special conditions are required for these types of removal operations. Attorney Hoyt read to the audience this section of the law.
Mr. Hoyt explained that the Town does not have a sand and gravel ordinance but defers to the DEC.
Ms. Geissler explained that Mehlon trucking proposes to use 18.1 acres of approximately 160 acre parcel. Ms. Geissler referred to a plan showing how the site look today with a power line going thru it and an existing shale mine, which has been in existence for the last 20 or 30 years. Ms. Geissler explains that it fronts on Kings Hill Road and borders the Town of Newburgh, Town of Shwangunk in Ulster County. Ms. Geissler went on to explain that the applicant wishes to move approximately 820,000 cubic yards of in place shale over a 15 year period. Ms. Geissler explained that this will be done in 5 - 3 year phases. Ms. Geissler explained that the first phase reclamation work will be done on the site where the mine now exists, removing the steep slopes. Ms. Geissler went on to explain that the three year phases will start up on the hill. Ms. Geissler stated that when one phase is done that land will be totally reclaimed and it will be grass with meadow type vegetation with scrubby type bushes. Ms. Geissler explained that there are trees up there now, but they are not in good condition. Ms. Geissler explained that since the shale is very close to the surface much of the land is very scrubby in nature. Ms. Geissler stated that although the site looks heavily wooded, if a Forester was sent in, they would give a different judgement. Ms. Geissler stated that there is an existing access road, which they intend to continue to use and install drainage control for storm water and upgrade the intersection quite heavily on Kings Hill Road. Ms. Geissler stated that they will be bringing this intersection up to DEC standards for 20 trucks a day to use.
Chairman Schmool read for the record a letter from Joseph A. Carfizzi, dated June 21, 1989 disputing the boundary line between the Town of Montgomery and the Town of Newburgh. (copy of this letter is on file)
Attorney Hoyt stated that in his opinion Mr. Carfizzi has done a lot of work and and does not wish to slight any of his work. Mr. Hoyt stated that Mr. Carfizzi has gone back several hundred years and has come up with information and has dispursed it to the DEC, the County and both Townships. Mr. Hoyt explained that there is a procedure for municipalities, who have a problem with their boundaries, either by agreement or by order of the Court. Mr. Hoyt explained that the Town of Montgomery does not have anything from the Town of Newburgh to indicate that the Town of Newburgh believes that the boundary is incorrect. Mr. Hoyt stated that he is not saying that what Mr. Carfizzi has done is wrong, but that he can say that the Town of Newburgh has plenty of opportunity to respond in writing exactly

Planning Board Meeting
Page 6
June 26, 1989

Mehlon Trucking - Public Hearing (cont'd)

why they believe, if they believe, the boundary to be wrong, but have not done that to his knowledge. Mr. Hoyt stated that in his opinion there is not a municipal dispute as to the boundary line.
Chairman Schmoll asked if any of the Board Members had any questions.
Board Member Crabtree asked if the applicant had a DEC permit.
Ms. Geissler explained that they did not. That the DEC permit had been held off pending resolution of SEQRA issues, which is the Town of Montgomery's domain as lead agency.
Attorney Hoyt stated that Ms. Geissler was right since the Board declared lead agency status on this application.
Chairman Schmoll opened up questions from the audience.
Mr. Grew, adjacent property owner, questioned Ms. Geissler's statement of the land having shrub.
Ms. Geissler clarified that whe was not talking about that side of the property.
Mr. Grew stated that the top of the hill is quite heavily forested with trees not shrubs.
Ms. Geissler stated that t his was true and would stay that way. She also stated that the mine is located on the other side of the crest, so it should not be visible and that also a buffer has been left.
Mr. Grew asked if the trees would turn into meadow.
Ms. Geissler stated only on one side and this was just to stabilize the soils and shrubs will start to vegetate over a period of years.
Mr. Sleets of Maidstone Drive stated that the previous owners, as late as last year, would run dump trucks over the Town of Newburgh Road, which is a 3 ton road, uncovered and were dropping shale all over Kings Hill Road. He also stated that in the Spring the road was torn up pretty heavily and that the Town of Newburgh had to spend a lot of money to repair the road.
Mr. Calvano, area resident, stated that his property runs right along side of the access road mentioned, which is approximately 50 to 100' from the road. Mr. Calvano stated that road which meets the Town of Montgomery Road is half the width of the Town of Montgomery, Kings Hill portion of it is. He also stated that there is a steep incline, which is not visible to any motorists coming from the Town of Newburgh to the Town of Montgomery, especially when the sun is in your eyes. Mr. Calvano stated that 2 years ago when they were mining, he inquired about this because there were 18 wheeler trucks coming thru there on a road where one truck is the only thing that can go thru there at any given time. He stated that Kings H ill Road from the Town of Newburgh side is winding and very narrow at the turns. Mr. Alvano also expressed his concerns about the dust stating that laundry cannot be hung out and at one time contaminated oil was put down to keep the dust down. He went on to say that truck: were travelling as early as 7AM and 7 days a week. Mr. Calvano stated that he does not know where the applicants get sand and gravel because the only thing he can see is shale. Mr. Calvano stated that it is very dangerous and very close to h is drive and he doesn't know how that could be approved without rebuilding the entire Kings Hill Road from the Town of Montgomery to Kings Hill Road. Mr. Calvano stated that he also went to the Town of Newburgh Highway Department and they do not intend to remove the 3 ton weight limit.

Planning Board  eting
Page 7
June 26, 1989

Mehlon Trucking  - Public Hearing (cont'd)

Mr. Calvano went on to say that the Town of Newburgh does not know anything about this application. He also stated that there is a 5 ton limit on the Town of Montgomery side going across the acquaduct. Mr. Calvano stated that as a resident, he does n ot feel that this is a very good proposal for a residential area.
Ms. Geissler stated that the Town of Newburgh is posted for 3 ton traffic, so the traffic will be going toward the right, as it turns out of the property, down Kings Hill Road in the Town of Montgomery.
Ms. Geissler stated that there are a number of things that have been proposed by the applicant to take care of the dust problem and to address that intersection. She explained that the intersection, as she understands it, is probably almost 100' from Mr. Calvano's driveway and its wooded in that area.
Mr. Calvano stated the trees are not that thick and the dust comes thru.
Ms. Geissler explained that whenever traveling in the dry weather, the applicants must wet down the road. She explained that the applicant has spent quite a bit of money putting together a mining plan which describes how the mine will be dug, what the blasting will be like, what the erosion control measures will be and dust control and that copies were submitted to the Board.
Mr. Calvano stated that they have already had a sample of that in the past 2 years when the applicant was mining at that time. Mr. Calvano asked if that was illegal mining at that time.
Ms. Geissler stated that the applicant was mining under his current permit and at that time the DEC was more relaxed in regards to that.
Mr. Calvano stated that he was never told to go to the DEC but that this Town issued the mining permits.
Ms. Geissler explained that the Town issues a Special Exception Use Permit and the DEC issues a Mining Permit.
Mr. Calvano stated that they are talking about a RA 2, residential area.
Ms. Geissler stated that actually it is RA 1.
Chairman Schmoll asked Ms. Geissler to address the questions that were raised in respect to the time the hauling would be done.
Ms. Geissler stated that the applicants can, if it is the Board's pleasure, adjust the time when the trucks would go in and out. For example not before 7:30AM and ending at 3:30 in the afternoon.
Mr. Calvano stated that the time when those trucks travel is really of no consequence, its the traveling, period.
Mr. Jansen, area resident, questioned the travelling of the trucks on the weedends.
Ms. Geissler stated that there were no plans for weekend hauling.
Mr. Jansen asked if the applicant intended to stay within the 5 ton loadlimit since thats not a very big load. He stated there use to be tractor trailers going out which was the problem that ruined the road.
Mr. Grew asked when the blasting would take place.
Ms. Geissler explained that the blasting would take place approximate twice a month and it would take place after local residents within an 800' radius of the proposed mine site, had a pre-blasting survey done their homes.
Mr. Grew asked who would pay for the pre-blasting survey.
Ms. Geissler stated that the applicant would pay. She stated that they would come in and video tape the foundations.

Planning Board Meeting
Page 8
June 26, 1989

Mehlon Trucking - Public Hearing (cont'd)

Mr. Grew stated that they all have wells around the area. He asked if it has been shown that this blasting would not affect the resident's wells.
Ms. Geissler stated that it is not a belief based on the geology that it would affect the wells, but that is what the pre-blast survey is for.
Don White, area resident, stated that about 2 years ago when they started blasting he got multiple cracks in his foundation.
Chairman Schmoll asked if there was an alternative way of removing the shale instead of blasting.
Ms. Geissler stated no, not really.
Sam Phelps, area resident stated if you don't set it all off at once but it goes off in pieces.
Ms. Geissler stated a time delay.
Mr. Phelps stated you don't get as big a shock wave but you get a longer shock wave.
Ms. Geissler stated that the applicant will have to file a blasting plan by a licensed blaster and in that restrictions can be set up.
Mr. Phelps asked in what area of Kings Hill is this application.
Ms. Geissler stated that it is on the north side and showed Mr. Phelps on the zoning map.
Mr. Phelps stated that eventually you will see a bare spot.
Ms. Geissler stated that you should not see a bare spot because it is 160 acres. Ms. Geissler showed Mr. Phelps on the zoning map where the mining will take place and explained that it is only for 18 acres.
Mr. Phelps asked what the slopes were.
Ms. Geissler stated that the slopes vary from as much as 10% to 8%.
Mr. Phelps stated that after you mine for 2 or 3 years your suppose to rehabilitate. Well they rehabilitated in 2 pieces and it looks like moon scape. He stated that they planted the grass and did what they were suppose to according to what the DEC said and along comes a year like this year...
Ms. Geissler stated that this situation is different in that there is no streams out there. She went on to say that to accomodate the storm water issue there will be hay bales, the top soil will be pushed off and moved to the sides and that will be seeded down and a silt fence will surround that. There will be silt fences at the toe of each slope or hay bales, because they are equally affective. She went on to explain that there will be sediment traps at the end of each contour at the edge of the mining.
Ms. Geissler explained that the applicants have a mine site that has been there for 20 to 30 years.
Ms. Reinhardt stated that her brother and Chet Dunn owned that property and that her brother operated the mine and it is a good 35 years.
Ms. Geissler stated that as mining operations go, this is not a high level mine, but a low level of operation, 800,000 cubic yards over 15 years. Ms. Geissler stated that this site is already clear as 40% of the proposed area is currently a mine. She went on to say that even in the Fall it is not visible from the road.

Planning Board Meeting
Page 9
June 26, 1989

Mehlon Trucking - Public Hearing (cont'd)

Mr. Jansen stated years ago when Charlie and Chet were pushing shale out of there, there was no blasting done. It was pushed off and used on the roads up there. Since that time the wells on Snowden Drive, which are artesian, a few years ago had organic material in them and he had to put a carbon filter in his. He stated that since the wells are artesian the water has to come from some where above it.
Ms. Geissler questioned organic material.
Mr. Jansen stated that he had the water tested and it was okay. But that there was like a sediment in it.
Mr. Grew stated that he had been up in there about a year ago and saw a pile of sludge and asked if anyone knew what it was.
Mr. Mehl answered that it wasn't sludge but chicken manure.
Mr. Grew asked if this was going to be a common practice.
Mr. Mehl answered that if Mr. Grew looked up there, there was only a couple of yards of it.
Mrs. Mehl stated that he shouldn't have been up there, that its private property.
Mrs. Calvano stated that there is kids going up there having beer parties every night.
Mrs. Mehl stated the neighbor's kids.
Mrs. Reinhardt asked where the Town of Newburgh comes into this.
Ms. Geissler stated that she had an answering comment regarding Mr. Carfizzi's letter. She stated that Wehran Engineering did prepare an actual field survey of the property. Ms. Geissler went on to explain that the field survey represents the physical evidence found in the field and it also represents the deeds on record and this means not ju st the deeds pertinent to the property itself, but the surrounding deeds of the abutting properties. Ms. Geissler stated that there is nothing in any of the deeds, and some go back quite a ways, that implies that this is not in the Town of Montgomery, but in fact, the deeds all reference this property as being in the Town of Montgomery. Ms. Geissler stated that futhermore, that survey certifies to the Town, as representing a true and real survey of the property. Ms. Geissler stated that Mr. Carfizzi is not a licensed land surveyor, although he is an extremely knowledgeable man and has done a great deal of research, but that she takes issue with his blanket statement regarding that the Wehran Survey is incorrect. Ms. Geissler stated that she would like to have it on record that they do object to that statement.
Mr. Grew asked how the residents would go about getting a pre-blast survey.
Ms. Geissler stated that notification will be sent to everyone and that the residents can contact Wehran Engineering. She also stated that in the Mine Book is recorded areas that are included in the survey and is subject to DEC approval.
Mr. Jansen stated that he is still concerned about the weight limit in regards to the road. He asked if they get the mining permit, will the 5 ton limit hold.
Mr. Hoyt stated that he will research the weight limit. He also stated that if there is a weight limit then that is the weight limit and the applicants would not be granted any favors from the Town.

Planning Board Meeting
Page 10
June 26, 1989

Mehlon Trucking - Public Hearing (cont'd)

Mr. Calvano asked if there was a plan submitted for the upgrading of the access road.
Ms. Geissler stated that there was a plan submitted and included with the documents filed with the Town.
Ms. Calvano asked how the entrance way will be controlled with regards to kids with motor bikes, etc.
Ms. Geissler stated with a very large, high quality gate and that it is a concern of the applicant to have kids up there too.
Mr. Garling stated that his firm is also Town Planners for the Town of Newburgh and that they have spoken to the Newburgh Planning Board and to the Town Board regarding the application and they have not commented, one way or the other, or given them an direction, but that they are aware of the meeting. Mr. Garling also stated that they have also been in contact with William Duggan of the Orange County DPW and he has indicated that they have some concern because of the traffic that might go out onto Rock Cut Road, which is a major north-south highway. Mr. Garling stated that he will convey to Mr. Duggan what was stated tonight, that the traffic will go toward Montgomery and not toward Rock Cut Road. Mr. Garling stated that Mr. Duggan also brought up the fact of the weight limits. Mr. Garling stated that if there is weight limits imposed by the Town of Montgomery, Town of Newburgh or New York City Water Department because of the acquaduct, it will be researched before a decision can be made.
Since there were no further comments, a motion to close the Public Hearing was made by Board Member Crabtree and seconded by Board Member Trapini. All in Favor - All Ayes - Motion Carried.

Approval of Minutes for June 12, 1989

A motion to approve the minutes for the June 12, 1989 meeting, as written, was made by Board Member Seacord and seconded by Board Member Crabtree. All in Favor - All Ayes - Motion Carried.

Crist Brothers Orchard - SEU Permit Application - SEQRA Determination and Decision

Chairman Schmoll reviewed with the Board the short environmental assessment form. A motion was made that a resolution be adopted finding that this project does not have significant environmental impact by Board Member Seacord and seconded by Board Member Mills. All in Favor - All Ayes - Motion Carried.
A motion to approve the SEU Permit application was made by Board Member Crabtree and seconded by Board Member Mills. All in Favor All Ayes - Motion Carried.